23-6265-cr
*United States v. Franklin*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of September, two thousand twenty-four.

PRESENT:
>     GERARD E. LYNCH,
>     BETH ROBINSON,
>     SARAH A. L. MERRIAM,
>         *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

>     *Appellee*,

>         v.                                                          No. 23-6265

JAMOL J. FRANKLIN,

>     *Defendant-Appellant*.

_____

FOR APPELLANT: JAMES EGAN, Assistant Federal Public Defender for the Northern District of New York, Syracuse, NY.

FOR APPELLEE: RAJIT SINGH DOSANJH, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).[*]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**. Below, we assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In 2023, Jamol J. Franklin pled guilty to possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Pursuant to Federal Rule of Criminal Procedure 11(a)(2), he entered the guilty plea preserving his right to challenge on appeal the district court's denial of his motion to suppress evidence

---

[*] Although U.S. District Judge Mae A. D'Agostino entered the judgment for this case, Senior U.S. District Judge Norman A. Mordue ruled on the suppression issues that are the subject of this appeal.

that he argues was seized in violation of the Fourth Amendment. On appeal he makes the following three arguments: (1) the officers lacked reasonable suspicion when they initiated an investigatory stop of him at an Amtrak station, (2) the investigatory stop ripened into an arrest unsupported by probable cause, and (3) Franklin never gave voluntary consent for a search of his belongings, which contained cocaine.

We review a district court's factual findings on a motion to suppress for clear error and its ultimate legal conclusions without deference. *United States v. Caraher*, 973 F.3d 57, 61 (2d Cir. 2020). As we explain below, we conclude that the district court did not err when it denied Franklin's motion.

*First*, reasonable suspicion supported the investigatory stop. "Reasonable suspicion demands less than is necessary for probable cause, and is satisfied as long as authorities can point to specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting legal wrongdoing." *Soukaneh v. Andrzejewski*, 112 F.4th 107, 117 (2d Cir. 2024) (cleaned up). Franklin argues that the tips received by the officers, which are documented in partially sealed Amtrak Police Department reports, did not supply information sufficient to establish reasonable suspicion.

Franklin does not challenge the district court's ruling declining to require the Government to disclose unredacted copies of those reports, but asks this Court to conduct an *in camera*, meaning private, review of the unredacted reports to independently determine whether they supply reasonable suspicion. We have done so, and we conclude that the complete, unredacted reports establish the reasonable suspicion to conduct an investigatory stop. The reports, including the tips themselves and corroborating independent police investigation, establish that the tips bore "sufficient indicia of reliability" to support an investigative stop. *United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007) (cleaned up).[1]

*Second*, the investigatory stop did not ripen into an arrest. The government bears the burden of establishing that its seizure "was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *United States v. Fiseku*, 915 F.3d 863, 870 (2d Cir. 2018) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). Factors relevant to this assessment include: "(1) the length of time involved in the stop; (2) its public or private setting; (3) the number of participating

---

[1] At oral argument, Franklin argued that the district court erred by basing its findings on the unsworn police reports, without requiring sworn testimony from an officer that the information in the reports was true. That argument was not made in Franklin's briefs, and accordingly we decline to consider it. *See United States v. Cedeno*, 644 F.3d 79, 83 (2d Cir. 2011).

law enforcement officers; (4) the risk of danger presented by the person stopped; and (5) the display or use of physical force against the person stopped, including firearms, handcuffs, and leg irons." *Id.* (cleaned up).

Considering the totality of the circumstances here, the investigatory stop never ripened into an arrest. Between the time the officers intercepted Franklin and the moment Franklin stood up to give the officers his backpack, less than two minutes elapsed. The officers spoke to Franklin in a public part of the Amtrak station, where numerous civilians walked by and could see them in plain view. At no point did the officers use physical force. Franklin was never handcuffed, and the officers never brandished any weapons. Those considerations support the conclusion that the investigatory stop never developed into an arrest.

It's true that the number of officers in the vicinity of the stop far outnumbered Franklin. Eleven officers were at the scene, and Franklin was alone. *See Soukaneh*, 112 F.4th at 119 (eight to eleven officers versus one suspect was a factor suggesting that suspect was effectively arrested); *United States v. Patterson*, 25 F.4th 123, 144 (2d Cir. 2022) (determining that four officers outnumbered one suspect "only modestly," and that the presence of four officers was a reasonable protective measure given the circumstances rather than a sign of arrest). And it's

5

true that, according to the video evidence, Franklin's actions were compliant and peaceful. Still, those facts, on their own, do not convert the stop into an arrest under the totality of the circumstances. Although the officers far outnumbered Franklin, only four were in his immediate vicinity while he was questioned. The other seven stood away at a considerable distance and were only intermittently seen near the area in which Franklin was questioned. Nobody blocked Franklin's potential passage from the seating area where they sat. And the officers were in plain-clothes. In fact, it appears the encounter was so unremarkable that numerous individuals walked past Franklin and the four officers without doing a double-take, rubbernecking, or otherwise taking interest in the encounter. Given the overall circumstances, we agree with the district court that Franklin's stop never turned into an arrest.

*Third*, and finally, the district court did not clearly err when it concluded Franklin voluntarily consented to a search of his belongings.

The Fourth Amendment protects individuals from unreasonable searches, and warrantless searches are unreasonable by default, subject to only a few exceptions. *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995). Voluntary consent is one exception to the warrant requirement. *Id.* Whether a suspect's

consent was voluntary is a factual question determined under the totality of the circumstances. *United States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004). Accordingly, we "will not reverse a finding of voluntary consent except for clear error." *United States v. Moreno*, 701 F.3d 64, 76 (2d Cir. 2012) (cleaned up). And where a "district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even though convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently." *Isiofia*, 370 F.3d at 232 (cleaned up).

Here, the district court did not clearly err when it found that Franklin voluntarily consented to the search. An officer testified that after he sat down with Franklin and began to ask questions about drug trafficking, Franklin suddenly—without any prompting—said, "[Y]ou want to search my shit, go ahead and search my shit." App'x 105. A second officer's testimony corroborated that. Franklin gave a different account, testifying that the officers repeatedly asked him if they could search his bags, and he refused each time. Given the overall record, the officers' testimony was plausible, and the district court's decision to credit the officers' testimony over Franklin's was not clearly erroneous. The district court's assessment is further supported by the factors we have relied on in concluding he

was not effectively arrested—the consent was given in a public space shortly after the investigative stop, and the district court found no evidence of force or threats of force. We are thus compelled to affirm the factual finding that Franklin voluntarily consented to a search. *See Isiofia*, 370 F.3d at 232 ("[W]here, as here, findings are based on credibility determinations, even greater deference is required . . . .").

\*      \*      \*

We have considered the parties' remaining arguments and conclude they are without merit or do not warrant discussion. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court